```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-21-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ARRELLO BARNES,

                    Plaintiff,                12 Civ. 1916 (PKC)

        -against-                  MEMORANDUM
                                                                   AND ORDER

CARLA ROSS, BRIAN FISCHER, SUEANN
SMITH, DR. SYED MAHMUD, and OSMAN
YILDIZ,

                    Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Arrello Barnes, proceeding pro se, brings this action under 42 U.S.C. § 1983. Barnes is a mentally ill inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Defendant Fischer is Commissioner of DOCCS. Defendants Ross, Smith, Mahmud, and Yildiz are employees of the New York State Office of Mental Health. Construing the complaint liberally, plaintiff alleges that defendants have been, and continue to be, deliberately indifferent to his serious medical needs arising from his mental illness in violation of the Eighth Amendment, as applied here through the Fourteenth Amendment's Due Process Clause. The complaint also raises a claim under the Fourteenth Amendment's Equal Protection Clause insofar as plaintiff, an African American, alleges that he received disparate medical care on account of his race. The complaint seeks damages and prospective injunctive relief on behalf of Barnes as well as other inmates not parties to this action.

        Defendants move, under Rule 12(b)(6), Fed. R. Civ. P., to dismiss the complaint on the following grounds: (1) failure to exhaust administrative remedies as to defendant Fischer;

(2) failure to allege personal involvement by defendants Fischer and Yildiz; (3) failure to state a claim upon which relief can be granted; and (4) qualified immunity.

For the reasons set forth below, defendants' motion is granted in part and denied in part. The Court concludes that Barnes has failed to adequately allege the personal involvement of Commissioner Fischer, who is dismissed from this action. Barnes has also failed to state an Eighth Amendment claim. The motion is denied as to Barnes' equal protection claim for racial discrimination.

BACKGROUND

I. The Complaint

The following facts are taken from the complaint and assumed to be true in considering defendants' motion. All reasonable inferences are drawn in favor of plaintiff, the non-movant.[1]

Since July 2011, mentally ill prisoners at the Sullivan Correctional Facility ("Sullivan"), including Barnes, have attempted to commit suicide on numerous occasions. (Compl. 2-3.) The prisoners have harmed themselves through methods such as cutting themselves and swallowing glass. (Id. at 3.) In one instance, an inmate died from such self-inflicted injuries. (Id. at 3.) Barnes, in particular, has suffered from mental illness since the age of eleven, having been admitted to a hospital in 1991 because he was hearing voices. (Id. at 12.)

---

[1] The complaint consists of a seven-page form titled "Complaint under the Civil Rights Act, 42 U.S.C. § 1983 (Prisoner Complaint)," which Barnes completed by hand. In addition, Barnes annexed several affidavits and other documents, for a total of thirteen pages (collectively, the "complaint" or "Compl."). The Court will cite to matters in the complaint by referencing the page on which the information appears in the electronic version of the complaint available on the docket. (Dk. #1.) The same applies to other documents submitted by Barnes. Also, for ease of reading, material quoted from the complaint is in some instances reproduced without respect to the original capitalization or punctuation.

Since August 2011, Barnes has attempted, while incarcerated at Sullivan, to hang himself and cut his ears off to prevent himself from hearing voices. (Id.)

The complaint alleges that the treatment of mentally ill prisoners at Sullivan differed depending on their race or ethnicity. Following an attempted suicide or other self-inflicted injury, defendants Smith and Mahmud sent white inmates for treatment at an outside medical facility referred to by the parties as Marcy Hospital. (Id. at 3.) Black and Latino inmates, including Barnes, were subject to a different procedure.[2] First, approximately 16 hours after a suicide attempt, defendants conducted five-minute interviews with each black or Latino prisoner who had attempted suicide. (Id.) The complaint alleges that at least some of these interviews were conducted solely by defendant Ross, a social worker, and that during these interviews, Ross "talked down to MHU inmates" and would "kick them out of her office." (Id. at 3, 5.) After being interviewed, prisoners were placed, for approximately 13 days, in "OBS/MHU," which the Court construes as a reference to observation at Sullivan's on-site mental-health unit. (Id. at 3.) Following this observation period, inmates were sent back to their cells. (Id.) Dr. Mahmud prescribed black and Latino prisoners, including Barnes, psychiatric medication for approximately seven days and then took the inmates off of the drugs, which caused them to feel suicidal again. (Id. at 3, 12.) These inmates proceeded to injure themselves by cutting themselves with razors, swallowing glass and medications (which required that their stomachs be pumped), and giving themselves rope burns from hanging attempts. (Id. at 3.) According to the complaint, Commissioner Fischer was aware of these events, which resulted in

---

[2] Defendants correctly note that Barnes never identifies his own race in his complaint. In his other submissions, however, Barnes identifies himself as "African American." (Dk. # 33 at 2.) Regardless, his aggrieved status as a non-white inmate can fairly be inferred from the complaint's other allegations.

part from the fact that the facility's doctors gave the social workers too much discretion in treating inmates. (Id.)

The complaint also alleges that mentally ill inmates have been given misbehavior reports for harming themselves, accused of attempting to manipulate the facility's mental-health system, and confined to their cells for 23 to 24 hours a day without treatment. (Id. at 5.) Barnes states that the MHU staff used OBS/MHU as a form of punishment, leaving the lights on throughout the night and prohibiting inmates from brushing their teeth or possessing books or writing materials. (Id. at 12.)

II. Procedural History

On September 7, 2012, plaintiff asked that the Court impose sanctions on defendants and enter a default judgment for plaintiff because defendants had failed to answer or move with respect to the complaint. (Dk. #25.) On November 16, 2012, plaintiff again moved for a default judgment. (Dk. #32.) Both motions are hereby denied because on August 29, 2012 Magistrate Judge Ellis entered an order extending defendants' time to answer the complaint to November 2, 2012 (Dk. #20) and the answer date was further extended by Judge Ellis to November 16 (Dk. #28) and by this Court to December 11, 2012. (Dk. #30.) Defendants timely moved to dismiss the complaint on December 11, 2012. (Dk. #34.) Thus, there is no basis to hold defendants in default or impose sanctions.

In response to defendants' motion to dismiss, plaintiff filed a motion for summary judgment, in which he responds to defendants' arguments in favor of dismissing the complaint. (Dk. #40.) Plaintiff also filed a "Reply to Motion to Dismiss" on November 29, 2012 (Dk. #33), i.e. before Defendants' filed their motion to dismiss. Given that plaintiff is proceeding pro se,

4

the Court will deem both of plaintiff's filings (Dk. #33 & Dk. #40) as his opposition to defendants' motion to dismiss.

DISCUSSION

I. Pleading Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. Nevertheless, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and quotation marks omitted). Courts continue to afford special solicitude to pro se complaints after Iqbal and Twombly. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

"[O]n a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit,'" although "mere notice or possession is not enough" absent plaintiff's reliance on such documents. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)

(omissions in Chambers).  A court may also consider "[a]n affirmative defense . . . raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).

## II. This Case May Not Proceed As A Class Action

The complaint originally named ten plaintiffs in addition to Barnes, all of whom were dismissed from the action on June 6, 2012.  (Dk. #10.)  Nonetheless, Barnes purports to seek relief, not only on behalf of himself, but also on behalf of other inmates similarly situated.  Aside from limited exceptions not applicable here, a litigant may only represent non-parties through a class action certified under Rule 23, Fed. R. Civ. P.  See generally Taylor v. Sturgell, 553 U.S. 880 (2008).  The requirements of Rule 23 are not satisfied here because, among other things, the absent inmates are only ten in number, and hence joinder would not be impracticable.  Rule 23(a)(1), Fed. R. Civ. P.  Nor has Barnes, an inmate who is not an attorney, demonstrated that he is an adequate class representative.  Rule 23(a)(4), Fed. R. Civ. P.  In any case, "[a] pro se litigant," such as Barnes, "is not empowered to proceed on behalf of anyone other than himself."  McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000).  Thus, the Court will only adjudicate the rights of the named parties in this case.

## III. The Complaint Fails To State An Eighth Amendment Claim

The Eighth Amendment prohibits infliction of "cruel and unusual punishments," including punishments that "involve the unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  "In the case of a state prisoner, it is the Eighth Amendment as applied to the States by the Fourteenth Amendment."  Caiozzo v. Koreman, 581 F.3d 63, 69 n.3 (2d Cir. 2009).  A prison official's "deliberate indifference to serious medical needs of

6

prisoners constitutes the 'unnecessary and wanton infliction of pain'" in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg, 428 U.S. at 173). To state a "cognizable" Eighth Amendment claim in this context, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

The deliberate indifference standard has two prongs. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The first prong is objective: the alleged deprivation of medical care must be "sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The second prong is subjective: the charged official must have acted with a "sufficiently culpable state of mind." Id. at 280 (citing Wilson, 501 U.S. at 300).

The objective prong is divided into two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin, 467 F.3d at 279 (citing Farmer, 511 U.S. at 844-47). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. at 280 (citing Helling v. McKinney, 509 U.S. 25, 32-33 (1993)).

Here, plaintiff's claim fails on the first subpart of the objective prong because he fails to plausibly allege that he was deprived of reasonably adequate medical care. A propensity to attempt suicide or harm oneself is undoubtedly a serious medical condition, as are the health effects that allegedly flowed from Barnes' mental illness, such as lacerations from cutting and hanging. But Barnes does not allege defendants' deliberate indifference to his mental illness and

7

self-inflicted harm. To the contrary, Barnes alleges that defendants responded to his attempts to hurt himself by interviewing him and placing him on observation and psychiatric medication for a period following each incident. (Compl. 3.) This is not deliberate indifference. Although Barnes takes issue with his treatment at Sullivan, contending that continued medication and treatment at a different facility are required, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Barnes does not suggest any reason why placing him on temporary observation and medication following each incident of self-harm was not a medically reasonable course of treatment. Even accepting as true plaintiff's unsupported assertion that prolonged medication and treatment at Marcy Hospital would be better, he still fails to state an Eighth Amendment claim. Barnes is not entitled under the Eighth Amendment to the best treatment available; he is merely entitled to "reasonable care." See Salahuddin, 467 F.3d at 279. Barnes fails to plausibly allege that he has received less than reasonable care, and therefore his Eighth Amendment claim must be dismissed.

    IV. The Complaint States An Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

In the context of certain constitutional challenges to prison policies, the Supreme Court has held that a prison policy "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). "Racial classifications," however, "raise special fears that they are motivated by an invidious purpose," and the Supreme Court has accordingly held that "[t]he right not to be discriminated against based on one's race is not susceptible to the logic of Turner." Johnson v. California, 543 U.S. 499, 505, 510 (2005). As the Court in Johnson explained, the right to be free from racial discrimination "is not a right that need necessarily be compromised for the sake of proper prison administration. On the contrary, compliance with the Fourteenth Amendment's ban on racial discrimination is not only consistent with proper prison administration, but also bolsters the legitimacy of the entire criminal justice system." Id. at 510-11. Thus, strict scrutiny applies to racial classifications employed in prisons. Id. at 509.

Barnes alleges that minority inmates at Sullivan received mental-health care that differed from the care provided to white inmates. Specifically, he alleges that "Susan Smith and Dr. Mawmoon [sic], would only send [Caucasian] (white) inmates to Marcy Hospital, where they'll get the proper treatment. Africans & Hispanic[s] (Black[s] & Latins [sic]) would sit in OBS/MHU for long period[s], then [were] sent[] back to their cells, where they'll harm themselves or [try] to commit suicide." (Compl. 3.) While the complaint does not detail the diagnoses of each white and minority inmate at Sullivan with mental-health problems, the Court can conceive of no medical reason why white and minority patients would be sent to different facilities on a categorical basis.

Thus, even under the standard in Turner, Barnes' allegations state an equal protection claim. Here, as in Phillips v. Girdich, 408 F.3d 124 (2d Cir. 2005), Barnes "alleges

9

that he and other minorities were subject to disparate treatment because of their race.  Assuming those allegations to be true, as [the Court] must, [the Court] cannot imagine a legitimate penological reason for the conduct alleged."  Id. at 130 (applying Turner's "legitimate penological interest" standard).  It may be that the facts are not as Barnes has pleaded—that mental-health treatment at Sullivan was not doled out on the basis of race—but that is not the question currently before the Court on defendants' motion to dismiss.

V. The Complaint Adequately Alleges Personal Involvement By Defendant Yildiz, But Not By Defendant Fischer

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation and quotation marks omitted). Defendants argue that the complaint fails to allege the requisite personal involvement by defendants Fischer or Yildiz.  Having held that the complaint fails to state an Eighth Amendment claim, the Court need only address the allegations of personal involvement as they relate to plaintiff's equal protection claim.  For the reasons that follow, the Court concludes that Barnes has adequately alleged the personal involvement of Yildiz, but not of Fischer.[3]

  a. Defendant Yildiz

The complaint does not mention Yildiz by name, except to list him as a defendant. Barnes does state, however, that in "[e]ach interview[] I had with four of the defendant(s) I was denied mental health treatment."  (Compl. 12.)  Read in the light most favorable to Barnes, the four defendants referenced are the four defendants employed by the New York State Office of

---

[3] Because the Court concludes that Barnes has not adequately pleaded Fischer's personal involvement, the Court need not reach defendants' non-exhaustion argument, which is asserted only with respect to Fischer.

Mental Health, including Yildiz.  Barnes' other submissions to this Court also indicate that Yildiz personally interviewed Barnes.  In one of his submissions, Barnes states that "Defendant Osman Yildiz did in fact personally interview Plaintiff . . . ."  (Dk. #39 at 5; see also Dk. #33 at 2 ("The four MHU personnel [were] personally involved, based on the documentary evidence that each of the four MHU staff[] [members] personal[ly] interview[ed] Plaintiff . . . ."); Dk. #41 at 6 ("Four of the defendants personally interview[ed] Plaintiff, [saw] his distress, [were] aware of his mental illness, and failed to act on his illness.")).[4]  Although a party ordinarily may not amend his pleading in his briefs, see Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), the Court takes these additional allegations into account in light of Barnes' pro se status.

       The allegations in Barnes' submissions to this Court adequately allege that Yildiz had a direct, personal involvement in the alleged constitutional violations.  See Colon, 58 F.3d at 873 (Personal involvement is satisfied where "the defendant participated directly in the alleged constitutional violation . . . .").  While "the direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal," the Second Circuit has held that "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal" is sufficient.  Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) (footnote omitted).  Here, the allegation that Yildiz personally interviewed Barnes in connection with his allegedly discriminatory mental-health treatment raises an inference that Yildiz was aware of, and contributed to, Barnes' discriminatory

---

[4] Defendants argue that these new allegations contradict the allegation in the complaint that defendants "allow[ed] Mrs. Ross, the social worker, to solely interview inmates." (Compl. 3.)  While the allegation in the complaint could be taken to mean that only Ross, and not other defendants, interviewed inmates, it might also mean that Ross was allowed to conduct interviews without the assistance of others.  Thus, plaintiff's allegations are not necessarily contradictory.

treatment at Sullivan. This direct, personal involvement is sufficient to allege personal involvement by Yildiz.

  b. <u>Defendant Fischer</u>

    Besides naming Fischer as a defendant, the complaint mentions him only once, stating that "Brian Fischer is aware [that] inmates [are] not getting the proper mental health treatment." (Compl. 3.) Barnes adds in his briefing that "Defendant Fischer received letters from Plaintiff, Anthony Jones, [and] Prisoner's Legal Services, all informing him that Plaintiff was being denied mental health treatment," and that "all of the defendants respond[ed] to the letters written on behalf of Barnes." (Dk. #41 at 6-7.) The Court again takes these additional allegations into account in light of Barnes' <u>pro se</u> status. Even with these additional allegations, however, Barnes has merely alleged that Fischer has supervisory responsibility for the New York correctional system, an allegation that is insufficient to support liability.

    The Supreme Court addressed the extent to which supervisors may be held liable for the unconstitutional conduct of their subordinates in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). There, the Court was faced with Iqbal's allegation that two high-ranking government officials—Attorney General Ashcroft and FBI Director Mueller—"adopted an unconstitutional policy that subjected respondent to harsh conditions of confinement on account of his race, religion, or national origin." <u>Id.</u> at 666. The Court began from the premise that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of <u>respondeat superior</u>." <u>Id.</u> at 676. It went on to hold that "[b]ecause vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Id.</u> at 676. In other words, "[i]n a § 1983 suit or a <u>Biven</u> action—where masters do not answer for the

torts of their servants—the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or own misconduct."  Id. at 677.  The Court noted that "[t]he factors necessary to establish a Bivens violation will vary with the constitutional provision at issue," and that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."  Id. at 676.  Thus, in the context of the discrimination claim at issue in Iqbal, the Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."  Id. at 677.

Applying these principles here, Barnes' allegations are insufficient to state an equal protection claim against Fischer.  Barnes alleges that Fischer was aware that inmates at Sullivan were not receiving adequate mental-health treatment.  But Barnes does not plead any facts suggesting that Fischer was aware that minority inmates were treated differently than white inmates.  And even if Fischer did have knowledge of invidious discrimination by his subordinates, "purpose rather than knowledge is required" for Barnes' equal protection claim.  Id. at 677.  There is no allegation in the complaint that Fischer participated directly in any discriminatory conduct, nor that he purposefully created or encouraged a discriminatory policy.  The only other factual allegation concerning Fischer is that he responded to letters written on Barnes' behalf—a fact that, even if true, would not demonstrate his personal involvement.  See, e.g., Vogelfang v. Capra, ___ F. Supp. 2d ___, 10 Civ. 3827 (PAE), 2012 WL 832440, at *5-6 (S.D.N.Y. Mar. 13, 2012) (holding allegation that Fischer received a letter from plaintiff was "insufficient to establish liability under any of the five Colon avenues," regardless of the application of Iqbal); Mateo v. Fischer, 682 F. Supp. 2d 423, 431 (S.D.N.Y. 2010) (holding

13

Fischer's alleged receipt of plaintiff's letters, two of which he forwarded to subordinates, and Fischer's response to plaintiff, were insufficient to allege Fischer's personal involvement). Indeed, the Second Circuit held in Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997), that a prisoner failed to establish the requisite personal involvement of the Commissioner at that time by writing him letters, even though the Commissioner referred the first letter to a subordinate for investigation and responded directly to the second letter.  See also Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (holding allegations against Fischer's predecessor failed because they neither alleged his personal involvement nor his personal responsibility for the conduct to which he was allegedly deliberately indifferent).  The Court concludes that Barnes' allegations that Fischer was aware of Barnes' treatment and that Fischer received and responded in some manner to letters written on Barnes' behalf are insufficient to plausibly allege that Fischer, Commissioner of DOCCS, had any personal involvement in Barnes' medical treatment at Sullivan that would be sufficient to state an equal protection claim.

VI. Defendants Are Not Entitled To Dismissal On The Basis of Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The right of a prisoner to be free from racial discrimination is one such clearly established constitutional right.  See Johnson v. California, 543 U.S. 499 (2005); Phillips v. Girdich, 408 F.3d 124 (2d Cir. 2005).

Having concluded that the complaint adequately alleges that defendants Ross, Smith, Mahmud, and Yildiz intentionally discriminated against plaintiff on account of his race—

an alleged violation of a clearly established constitutional right—the Court cannot say in the same breath that these defendants are entitled to qualified immunity. Taking the allegations in the complaint as true, any reasonable official would have known it was a violation of Barnes' rights to make psychiatric treatment decisions on the basis of his race. Thus, defendants' motion to dismiss plaintiff's equal protection claim on the basis of qualified immunity is denied, without prejudice to raising the issue of qualified immunity at later stages of the litigation.

## CONCLUSION

Plaintiff's motions for sanctions and for a default judgment (Dk. #25 and Dk. #32) are DENIED. Plaintiff's motion for summary judgment (Dk. #40) is DENIED. Defendants' motion to dismiss (Dk. #34) is GRANTED in part and DENIED in part. Defendants' motion to dismiss is GRANTED as to all claims against defendant Fischer and as to plaintiff's Eighth Amendment claim against all defendants. Defendants' motion is otherwise DENIED.

SO ORDERED.

                                                            P. Kevin Castel
                                        United States District Judge

Dated: New York, New York
         February 20, 2013