USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-19-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARRELLO BARNES,

       Plaintiff,

- against -

SUEANN SMITH, CARLA STEINBERG-ROSS,
DR. SYED MAHMUD, OSMAN YILDIZ,
and BRIAN FISHER.

       Defendants.

OPINION AND ORDER

12 Civ. 1916 (PKC) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

*Pro Se* Plaintiff Arrello Barnes ("Barnes") is a New York State prisoner at Sullivan Correctional Facility ("Sullivan") and brings this action for violations of his Eighth and Fourteenth Amendment rights against Defendants Brian Fisher, Sueann Smith, Dr. Syed Mahmud, Carla Steinberg-Ross, and Osman Yildiz (collectively known as "Defendants"), employees of the New York State Office of Mental Health unit as Sullivan. Before the Court are Barnes's motions to compel discovery.

For the reasons that follow, his motions are **DENIED**.

## II. BACKGROUND

Barnes brought this suit against Defendants pursuant to 42 U.S.C. § 1983. He alleges that Defendants violated his Eighth and Fourteenth Amendment rights because they were deliberately indifferent to his serious mental health needs and provided disparate mental health treatment because he is African-American. Barnes's Eighth Amendment claim was dismissed by District Judge Castel on February 20, 2013. (*See* Docket No. 51.) In his remaining equal protection claim, Barnes argues that white inmates were sent to an outside hospital for mental

illness treatment, while he and other African-American inmates were treated within Sullivan's mental health unit.

On December 31, 2012, Barnes requested the following from Defendants: (1) a "copy of nurse registry and license from all defendants" except for Brian Fischer; (2) "a copy of [his] mental health records, including Defendants' notes, diagnoses, and treatment of Plaintiff"; (3) copies of The New York State Department of Corrections ("DOC") Directives 4301 and 4303; (4) DOC Directive 4091 and "Sullivan C/F logbooks dated August 2011 to May 2012; and (5) his suicide reports and DOC Directive 4302. (*See* Docket No. 44.)

On March 21, 2013, Defendants produced Barnes's Office of Mental Health ("OMH") "mental health records and copies of the SHU Exclusion Law, N.Y. Correction Law §§ 137-401, and N.Y. Mental Hygiene Law § 45," which totaled approximately 1,100 pages of documents. (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Compel. ("Def.'s Mem.") at 3.) Defendants refused to produce the "nurse registry and license," Directives 4901, 4301, 4302, and 4303, and the Sullivan C/F log books on grounds of relevance, confidentiality, and vagueness. With respect to Barnes's request for his suicide reports, Defendants maintain that no such records exist. (Def.'s Mem. at 3-4.)

In response, Barnes filed another motion to compel seeking Directives 4901, 4301, and 4303. He also requested the Sullivan logbooks from August 2011 to May 2012. (*See* Docket No. 64.) Barnes explained that these request were related to his equal protection claim. (*Id.*) Defendants wrote to the Court explaining that it was reviewing whether it could produce Directives 4901, 4301, and 4303. (Defendants' Letter to the Court dated April 10, 2013.) Defendants also stated that they would consider Barnes's request for the Sullivan logbooks if he narrowed his request to identify the "specific locations from which the log book is sought."

2

Defendants reiterated its objections to Barnes's request for the nurse registry and also argued that the registry was related to his Eighth Amendment claim, which had been dismissed, not to his Fourteenth Amendment claim. (*Id.*)

On May 2, 2013, Defendants produced in their entirety Directives 4901 and 4303. Defendants also produced redacted versions of Directive 4301 because DOC determined that unredacted versions would pose a security risk. On May 23, 2013, Barnes filed another motion to compel stating that Directives 4301 and 4303 were so redacted he could not use them as evidence. (*See* Docket No. 66.) He acknowledged receiving Directives 4901, 4301, and 4303, and specified that he was requesting logbooks from Sullivan's "OBS" and the names of inmates transferred to Marcy Hospital. (*Id.*) On June 13, 2013, Defendants produced additional discovery relating to Barnes's request for logbooks and transfers. In its response, Defendants explained to Barnes that privacy laws and safety concerns prevented it from producing the names of inmates transferred to an outside psychiatric hospital. (Def.'s Mem. at 5.) Defendants did, however, produce "summary statistics of each inmate in the observation cells, broken down by race, as well as a list of every inmate, with name redacted, who was in the observation cells between July 2011 and March 2012." (*Id.*) Lastly, Defendants produced a copy of an OMH directive that discusses observation cell policy.

The issues remaining before the Court are whether Defendants properly redacted Directive 4301, whether Defendants properly redacted the names of inmates who received mental health services, and whether Defendants must produce Barnes's "suicide reports."

## III. DISCUSSION

### A. Redactions To Directive 4301 Were Proper

The scope of discovery is generally limited to any matter, not privileged, which is relevant to the claim or defense of any party or appears reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). "A party asserting a privilege with respect to documents otherwise discoverable bears the burden of justifying the privilege's application." *Aguilar v. Immigration & Customs Enforcement Div. Of the United States Dep't of Homeland Sec.*, 259 F.R.D. 51, 56 (S.D.N.Y. 2009). "[D]iscovery may not be denied on the basis of an unsubstantiated assertion by counsel that disclosure of requested information might impair facility security." *Benitez v. Straley*, No. 01 Civ. 181 (CM) (RLE), 2008 WL 4093479, at *2 (quoting *Messa v. Woods*, No. 07 Civ. 0306 (DNH) (DEP), 2008 WL 2433701, at *2 n.1 (N.D.N.Y. June 12, 2008)). A claim that disclosure would pose a security risk must be supported by an affidavit from an appropriate official detailing specific facts supporting the alleged security risk. *Benitez*, 2008 WL 3109308, at *2.

Here, Defendants support its claim that an unredacted version of Directive 4301 would pose a security risk by producing a declaration by Danielle Barone ("Barone Decl."), assistant counsel in the Office of Counsel for the DOC. In her declaration, Barone explains that all Directives are coded to indicate whether it may be distributed to inmates. Directives coded as A are not generally distributed to inmates. (Barone Decl. ¶ 5.) The Directive at issue, 4301, is coded A. Directive 4301 details internal contact information for OMH "satellite units," which serve as treatment centers for inmates with psychiatric disorders. (*Id.* ¶ 4.) Barone further explains that sections were redacted because the information could be used to facilitate an inmate's escape and pose a risk to DOC staff. (*Id.* ¶¶ 7-9.) She also states that certain redactions

4

were made to protect the safety and welfare of inmates being treated. (*Id.* ¶¶ 10, 11.) With respect to the Directive 4301's "emergency admission referral form," Barone explains that it was redacted in error. Defendants intend to reproduce Directive 4301 without the "emergency admission referral form" redactions.

In Barnes's motion, he argues that he cannot use the redacted version of Directive 4301. There is no additional information to support his contention. Based on the Court's reading of Directive 4301, the document is arguably relevant to Barnes's equal protection claim because it establishes the procedures for inmate transfers to offsite medical facilities. Barnes's equal protection claim essentially argues that white inmates were being transferred while he, and other African-American inmates, were not. The underlying procedures for such transfers to "satellite unites" located on certain DOC facilities is relevant to Barnes's claim. Barnes does not, however, articulate any reason why Defendants' redactions are improper. In light of Barone's Declaration, the Court finds that Defendants properly redacted Directive 4301.

Barnes's motion to compel an unredacted version of Directive 4301 is **DENIED**.

**B.      The Withholding Of Inmates' Names Was Proper**

Barnes moves to compel the production of the names of inmates who were in Sullivan's observation unit and the names of inmates transferred to Marcy Hospital. Defendants refused to produce the names, citing prohibitions from Health Insurance Proptability and Accountability Act ("HIPAA") and New York Mental Hygiene Law § 33.13. Defendants instead produced statistical information "of each inmate in observation cells, broken down by race, as well as a list of every inmate, with name redacted, who was in the observation unit between July 2011 and March 2012." (Def.'s Mem. at 10; Ex. A.) Defendants also included information relating to inmates that were transferred Central New York Psychiatric Center. (*Id.*) The Court finds that

Defendants redactions were proper and the statistical information was a sufficient substitution.

Barnes's motion to compel the names of inmates in Sullivan's observation unit is **DENIED**.

C.  **Barnes's Request For His "Suicide Reports"**

Barnes has demanded that Defendants produce his "suicide reports." Defendants maintain that "suicide reports" do not exists. Defendants cannot be ordered to produce reports that do not exist. Defendants have already produced Barnes's OMH medical records, which should necessarily contain any suicide attempts. Therefore, Barnes's motion with respect to his "suicide reports" is **DENIED**.

D.  **Barnes's Conduct In Litigating This Case**

Barnes filed several motions to compel without conferring with opposing counsel or receiving permission from the Court. Barnes filed two of his motions pursuant to Rule 37, (*see* Docket Nos. 64, 66), which states that accompanying his motion the movant must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).; Moreover, Local Civil Rule 37.2 provides that "[n]o motion under Rules 27 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court by letter and such request has either been denied or the discovery dispute has not been resolved as a consequence of such conference." Barnes's motion did not include a certification, and premotion conferences were not held. *See, e.g., Carvel v. Franchise Stores Realty Corp*, No. 08 Civ. 8938 (JGK), 2009 WL 4333652, at *13 (S.D.N.Y. Dec. 9, 2009) (holding that the *pro se* plaintiff must meet and confer with opposing counsel prior to moving to compel the production

6

of discovery pursuant to Rule 37); *Forsythe v. Local 32BJ, et al.*, No. 10 Civ. 8557 (NRB), 2011 WL 2652395, at *5 (S.D.N.Y. June. 23, 2011) (requiring a *pro se* plaintiff to comply with Local Civil Rule 37.2).

Barnes not only failed to abide by the Federal Rules of Civil Procedure, but he also has failed to comply with the Local Civil Rules. Therefore,

**IT IS HEREBY ORDERED** that Barnes shall not submit any further motions without prior approval from the Court.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall not designate any motions filed by Barnes as "motions" unless a scheduling order for the particular motion has been entered on the Docket.

### IV. CONCLUSION

For the foregoing reasons, Barnes's motions to compel are **DENIED**. This Opinion and Order address Docket Entries 44, 64, and 66.

**SO ORDERED this 19th day of August 2013**
**New York, New York**

*[signature]*

The Honorable Ronald L. Ellis
United States Magistrate Judge